Elizabeth Murray, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and State Workmen's Insurance Fund, Respondents.

Argued March 9, 1979, before Judges CRUMLISH, JR., DiSALLE and CRAIG, sitting as a panel of three.

*Mark R. Cuker,* with him *R. David Bradley,* for petitioner.

*Martin W. Bashoff,* Special Assistant Attorney General, for respondents.

OPINION BY JUDGE CRAIG, August 9, 1979:

Section 440 of The Pennsylvania Workmen's Compersation Act[1] provides that reasonable attorney's fees shall be awarded to a claimant who prevails on a contested claim unless the record discloses a reasonable basis for the employer's or insurer's contest.

This case is an appeal from an order of the Workmen's Compensation Appeal Board (Board) which deleted a referee's award of attorney's fees while affirming his decision in favor of the claimant in all other particulars. The deletion of attorney's fees is the sole issue presented.

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. §996.

The record clearly establishes that claimant, a licensed practical nurse, fell and suffered a shoulder separation on her employer's premises on December 27, 1972. Claimant returned to work on March 12, 1973 while still experiencing pain and limitation of motion in her neck and shoulder area and continued to work until the severity of the pain forced her to leave work on January 21, 1974. She has continued medical consultation and treatment throughout the entire period, to the present.

She filed a petition for reinstatement of compensation on April 1, 1974, initiating the present case.

The Board's deletion of the award of attorney's fee was in reliance on *Crangi Distributing Co. v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 530, 333 A.2d 207 (1975), apparently on the basis that the referee made no specific finding of fact on the issue of reasonable contest. The law does not so provide.

*Poli v. Workmen's Compensation Appeal Board,* 34 Pa. Commonwealth Ct. 630, 384 A.2d 596 (1978), summarizes the governing approach to this kind of issue:

> A specific finding of fact on the issue of reasonable basis is not required under the Crangi case, and, in fact, this Court has held that the question of reasonable contest, while including factual inquiries, is ultimately a question of law. Ball v. Workmen's Compensation Appeal Board, 19 Pa. Commonwealth Ct. 157, 340 A.2d 610 (1975). Here, by awarding attorney's fees to the Appellant, the referee concluded as a matter of law that the basis for the insurer's contest was unreasonable. See Ratchko v. Workmen's Compensation Appeal Board, 31 Pa. Commonwealth Ct. 585, 377 A.2d 1012

(1977).   It is this question of law which is on appeal to us here.

*Poli v. Workmen's Compensation Appeal Board,* 34 Pa. Commonwealth Ct. at 633, 384 A.2d at 598.

Thus, the reasonableness of the contest is a legal conclusion which rests on the referee's factual findings supported by substantial evidence in the record. *Edmond v. Workmen's Compensation Appeal Board,* 43 Pa. Commonwealth Ct. 458, 402 A.2d 715 (1979). *Ratchko v. Workmen's Compensation Appeal Board, supra.*

The resolution of the legal question also involves consideration of the legal issues in the claim contested. *Poli v. Workmen's Compensation Appeal Board, supra.*

In this case, the referee made the following crucial finding:

> 2. The nature and cause of the injury sustained by the Claimant on December 27, 1972 were, in addition to the injury to her head when it struck the cement floor in her fall down the steps, included an acromioclavicular separation as well as a cervical spine sprain *with aggravation of a pre-existing, asymptomatic osteoarthritis of the Claimant's entire cervical spine.*

> *Although it is conceded that Claimant had a pre-existing degenerative joint disease of which she was entirely unaware and which had not in any way interfered with her ability to perform the work required of her by her job, it is clear that immediately following the injury of December 27, 1972, Claimant's osteoarthritis of the cervical spine became symptomatic and the symptoms have become so severe and chronic that Claimant is presently*

*totally and probably permanently disabled* (Emphasis added.)

Our review of the record shows that claimant's precise position at all times was that the work-accident made symptomatic a pre-existing arthritic condition of the neck, previously latent and asymptomatic.

The insurer-appellee somewhat confuses the issue by speaking in terms of a causal connection between the accident and the arthritic condition and quotes its examining physician, Dr. Lee:

Q: Doctor, is this condition related in any way to the accident she sustained in December of 1972?

A: No, this condition is due to long-standing, many many years—not just a couple of years of long-standing, stress and strain. That is the usual cause of this condition. So, in my opinion, she had this condition many, many years.

Q: And Doctor, what is the cause of her complaints with respect to the neck?

A: In my opinion, I think this very advanced discogenic disease appears because of her complaint of pain in the neck and also complaints of shoulder pain as well.

However, as the referee accurately perceived, claimant never contended anything other than that the arthritic condition was pre-existing, but became symptomatic as a result of trauma. When cross-examined on this precise issue, Dr. Lee responded:

However, it is conceivable that someone who had a preexisting such as severe degenerative arthritis like Mrs. Murray has, could have triggered some of the symptoms by the history of the injury like she sustained. And that kind of a symptom should have subsided under nor-

mal circustances, but sometimes it can defer longer, because of the preexisting conditions.

Q But in this case, then, it is conceivable based on the history given to you, that this fall aggravated a dormant preexisting condition?

A Yes.

Q And brought into focus the symptomatology that we have in this case?

A Yes. . . .

. . . .

Q You are not excluding the accident as a possible factor of her present complaints when you saw her in 1975?

A As I said, I don't think it actually was the really factor of her present condition. I said since she had such a severe arthritis, which I believe was a preexisting condition before this accident, that accident which happened on December could be the triggering of her symptoms.

Q Isn't it true also that some people who have arthritic conditions, in the absence of such traumatic experience, will go through and work along without a problem?

A That would be true. On the other hand, it could also be true that someone who has arthritis like this could develop the symptoms even without any traumas.

There is nothing in Dr. Lee's testimony that contradicts the assertion that the trauma aggravated the pre-existing condition. At best, Dr. Lee's testimony is that it is possible that it did not, and the referee in Conclusion of Law No. 4 accurately assessed his testimony as "not very helpful."[2]

---

[2] Dr. Lee examined claimant only once and was not familiar with her medical history.

In contrast, claimant's treating family physician, Dr. McCracken, and claimant's consulting physician with a specialty in orthopedic surgery, Dr. Ralston, both positively opined that the work injuries aggravated and made symptomatic her pre-existing arthritic condition.

Therefore, we do not here have a case of conflicting medical testimony where the referee could have chosen to believe one medical witness over another. The medical testimony is consistent. *Compare Spatola & Thompson v. Workmen's Compensation Appeal Board*, 43 Pa. Commonwealth Ct. 137, 401 A.2d 877 (1979).

In the face of the overwhelming medical testimony and opinion that claimant's fall made symptomatic her pre-existing arthritic condition, Dr. Lee's slight equivocation, that it was possible for the condition to emerge into painful symptoms apart from trauma, did not provide a sufficiently probative counter-inference upon which it could be concluded as a matter of law that the contest was reasonably based.

Accordingly, the order of the Board is reversed.

ORDER

AND Now, this 9th day of August, 1979, the order of the referee is reinstated in full and the order of the Workmen's Compensation Appeal Board at No. A-73991 is reversed insofar as it deletes the award of attorney's fees in the referee's order; in addition to the other provisions of the referee's order dated August 29, 1977, it is specifically ordered that respondents Philadelphia State Hospital and/or State Workmen's Insurance Fund shall pay claimant's costs of litigation in the amount of $618.16 and a reasonable attorney fee, in an amount approximating 20% of the initial recovery to the claimant in the specific sum of $6500, to be paid directly to R. David Bradley, Es-

quire, attorney for claimant, who shall see that all proper parties shall be paid, including all reimbursements due claimant, and evidence of such payments furnished to the State Workmen's Insurance Fund.